UNITED STATES

v.

**Staff Sergeant Wilbert L. ROBINSON, Jr., FR 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 United States Air Force Clinic, Duluth International Airport, 46th Aerospace Defense Wing (AD-COM).**

ACM 21875.

U. S. Air Force Court of Military Review.

Sentence Adjudged 17 April 1975.

Decided 23 Jan. 1976.

Appellate counsel for the Accused: Colonel Jerry E. Conner and Major John A. Cutts, III.

Appellate counsel for the United States: Colonel C. F. Bennett, Colonel Julius C. Ullerich, Jr., and Captain Alvin E. Schlechter.

DECISION

SANDERS, Judge:

Tried by a general court-martial with members, the accused was found guilty, contrary to his pleas, of premeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918. He was sentenced to a bad conduct discharge, confinement at hard labor for life, forfeiture of all pay and allowances and reduction to airman basic. The convening authority approved only so much of the sentence as provided for the discharge, forfeitures, reduction and confinement at hard labor for 15 years.

Appellate defense counsel have asserted several claims of error which we find to be adequately resolved in the staff judge advocate's post-trial review or to be otherwise lacking in merit. One matter does warrant further discussion and is treated below.

The death of the accused's wife as a result of gunshot wounds inflicted by the accused is not in dispute. The defense of the case rested on the question of the accused's sanity at the time of the shooting. As might be anticipated, the evidence on this issue is conflicting with expert witnesses being called by both sides.

The accused called two expert witnesses, a psychiatrist and a psychologist. Reduced to the basic issue, they opined that the accused lacked the requisite mental responsibility at the time of the offense. In rebuttal, the prosecution presented the testimony of two psychiatrists and a psychologist. One of the two rebuttal psychiatrists, a Dr. Fisher, had served as a member and chairman of a sanity board convened to evaluate the accused but did not personally interview him. Dr. Fisher was a board certified psychiatrist, was Chief of the De-

partment of Mental Health at the United States Air Force Regional Hospital at Sheppard Air Force Base, Texas, where the accused was hospitalized and examined, and frequently served as a member and chairman of sanity boards. He had formed an opinion as to the accused's sanity at the time of the offense and testified as follows concerning the basis for his opinion:

I reviewed in detail the Article 32 proceedings, the statement of charges that were sent. I had obtained also a copy of the psychiatrist's report and the clinical psychologist's reports that were obtained here locally. In addition, I reviewed his medical records that were forwarded with him and reviewed the entire compilation of records which we had acquired at Sheppard—that would include not only physician's statements, the detailed psychological testing looking up the raw data itself, and then nurses' observations, observations from occupational therapy, recreational therapy, but every source of information that we could get our hands on above and beyond the personal information obtained from Sergeant Robinson.

Dr. Fisher also stated that other sources of information included "historical information, family background, military career data, et cetera, as was obtained from both records and from Sergeant Robinson himself." He further testified that the time he spent studying and evaluating the data was dispersed over a month and "would represent several hours."

When Dr. Fisher was asked to state his opinion as to the accused's mental capacity, defense counsel objected urging that any questions asked of the witness should be in the form of hypothetical questions since Dr. Fisher had never actually interviewed the accused and that his opinion, insofar as it relied on evidence relayed to him by others, would be based upon hearsay. The military judge overruled the objection and Dr. Fisher was permitted to testify concerning his opinion of the accused's mental capacity. The defense did not conduct any cross-examination of Dr. Fisher.

Regarding opinion evidence, paragraph 138e, Manual for Courts-Martial, 1969 (Rev.) provides in pertinent part:

Expert testimony may be adduced in several ways. An expert witness may be asked to state his relevant opinion shown to have been based on his personal observation or on an examination or study conducted by him, including an examination or study by him of reports of others of a kind customarily considered in the practice of the expert's specialty, without introducing in evidence or specifying hypothetically or otherwise in the question the particular data upon which the opinion was based and without showing the details of the expert's observation, examination, or study. The expert may be required, on direct or cross-examination, to specify the data upon which his opinion was based and to relate the details of his observation, examination or study.

This language is broader in scope than that contained in paragraph 138e, Manual for Courts-Martial, 1951, and adopts the more modern view permitting expert testimony which may be based upon the collective data of a number of experts contained in a joint or common effort. See generally, Analysis of Contents, Manual for Courts-Martial, United States 1969, Revised Edition, Department of Army Pamphlet No. 27–2 (1970).

In *United States v. Heilman,* 12 U.S.C. M.A. 648, 31 C.M.R. 234 (1962), the United States Court of Military Appeals held that a psychiatrist's testimony was admissible even though he indicated at one point in his testimony that his opinion was based in part on information he had received from others. The Court stated that it was clear from his whole testimony "that he had formed his own professional and expert opinion as to the mental condition of the accused." Although in the case at bar it is apparent that Dr. Fisher did not personally interview the accused, his testimony clearly indicated that, based upon his training and experience together with all of the medical and other data he evaluated, he had formed his own opinion as to the accused's mental

capacity. See also *United States v. Walker,* 12 U.S.C.M.A. 658, 31 C.M.R. 244 (1962); *United States v. Howard,* 19 U.S.C.M.A. 547, 42 C.M.R. 149 (1970).

In *United States v. Ross,* 19 U.S.C.M.A. 51, 41 C.M.R. 51 (1969), the testimony of two psychiatrists was admitted into evidence although the only personal contact they had with the accused was the accused's personal appearance before a medical board, with counsel, for about 10 minutes. The accused, relying on his Article 31, *Code,* supra, rights, refused to give anything beyond his name, age, date of birth, and place of birth. Noting that although prolonged and intimate interviews are the most satisfactory basis for a psychiatric opinion, the Court held that the brevity of the observation of the accused by the psychiatrists "affects the weight not the admissibility, of their testimony."

In a similar vein, the testimony of a psychiatrist was held admissible where based upon an examination of hospital records, files and limited observation of the accused at a staff conference with other experts. *Alexander v. United States,* 115 U.S.App.D.C. 303, 318 F.2d 274, 275 (1963). In a separate concurring opinion in *Alexander,* Judge Burger stated:

> I concur since this case represents another salutary application of *McDonald v. United States,* 114 U.S.App.D.C. 120, 312 F.2d 847 (1962) in that the weight of expert testimony is exclusively for the jury, not for the court, once qualifications are established.

See also *Carey v. United States,* 111 U.S. App.D.C. 300, 309, 296 F.2d 422 (1961).

In *Blunt v. United States,* 100 U.S.App. D.C. 266, 244 F.2d 355, 364 (1957) the Court stated:

> As an expert witness, the psychiatrist is permitted to testify to his inferences from facts. His *opinions* are exactly what is sought. And these opinions may be based on facts he has himself observed, or facts he has heard others relate, or hypothetical facts presented to him.

The testimony of a psychiatrist, whose qualifications were not questioned, that he could arrive at a valid diagnosis of the accused's mental capacity on the basis of an examination conducted months earlier and later psychological test reports, has been held admissible since the psychiatrist's ability to make a revised diagnosis without conducting a personal reexamination presented a question for the jury in determining the weight of his testimony. *Jenkins v. United States,* 113 U.S.App.D.C. 300, 307 F.2d 637 (1962).

Although noting that it would have been preferable to call a neuropsychiatrist who had examined the accused, the Court of Appeals in *Birdsell v. United States,* 346 F.2d 775 (5th Cir. 1965) held that another psychiatrist, who had reviewed all the hospital records and attended a staff conference where the accused made a brief appearance, was qualified to give his opinion as to the accused's sanity. In the case at bar, the psychiatrist in charge of the ward to which the accused was admitted and who conducted personal interviews with the accused over a period of time and who also served as a member of the sanity board, testified at trial as to his diagnosis of the accused and the basis for his opinions and diagnosis.

The modern trend toward eliminating restrictions on expert testimony is discussed in *United States v. Williams,* 447 F.2d 1285, 1290 (5th Cir. 1971). There the Court observed:

> Expert witness testimony is a widely-recognized exception to the rule against hearsay testimony. It has long been the rule of evidence in the federal courts that an expert witness can express an opinion as to value even though his opinion is based in part or solely upon hearsay sources.
>
> .　　.　　.　　.　　.
>
> The rationale for this exception to the rule against hearsay is that the expert, because of his professional knowledge and ability, is competent to judge for himself the reliability of the records and statements on which he bases his expert opinion.

**1244**

We are satisfied that the testimony of Dr. Fisher was properly allowed under the circumstances of this case. Although Dr. Fisher did not personally interview the accused, he testified he arrived at his own opinion concerning the mental competency of the accused based upon a lengthy and detailed study of all the material available on the accused. Significantly, this included (1) the reports of the psychiatrist and psychologist retained by the accused (both of whom testified at trial), (2) the reports and records compiled while the accused was undergoing evaluation at the USAF Regional Hospital at Sheppard Air Force Base (the psychiatrist and psychologist who examined and conducted tests on the accused, later serving on the sanity board as a member and as an advisor, respectively, both testified at trial), (3) the raw data from the psychological testing, (4) a detailed review of the Article 32 proceedings and charges and (5) "every source of information we could get our hands on." The defense was afforded ample opportunity to cross-examine Dr. Fisher if they had so chosen and test the basis and validity of his opinion.

The requirements of paragraph 138e, Manual for Courts-Martial, supra, are, in our opinion, in accord with the more recent authorities and trends in allowing greater latitude in opinion testimony. We find that these requirements have been met in this case.

The approved findings of guilty and the sentence are

Affirmed.

ROBERTS, Senior Judge, and ORSER, Judge, concur.