Ezra MILLER, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 90S00–8811–CR–942.

Supreme Court of Indiana.

July 25, 1991.

Eugene C. Hollander, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Following a jury trial, appellant, Ezra Miller, Jr., was convicted of having sexual intercourse with a child, I.C. 35–42–4–3(a), the Class B felony of child molesting. Appellant received the presumptive ten-year term for the Class B felony, and this sentence was enhanced an additional ten years for aggravating circumstances.

Appellant now brings this direct appeal maintaining that the trial court erred in allowing Dr. Donald Dian to testify, over hearsay objection, about the contents of a telephone conversation he had with a Dr. Varju concerning appellant's former girlfriend, Martha Garber Zang. Appellant raises several other allegations of trial court error, but because our resolution of the hearsay question requires the reversal of his conviction, we find it necessary to address only appellant's assertion that the trial court erred in permitting witness C.M. to give testimony concerning incidents of appellant's past misconduct as this issue is likely to arise on remand.

The following facts were adduced at trial: In July of 1985, appellant lived in the same house as E.R., E.R.'s mother, Cindy R., and E.R.'s younger sister, J.R. E.R. testified that appellant put his penis in her vagina on more than one occasion. She recounted the details of one event that occurred in July of 1985, when she was nine years old. E.R. stated that her mother had gone to the store and she was home with appellant and her younger sister. E.R. testified that appellant told her sister to watch for their mother while he and E.R. were in the bedroom. E.R. stated that when they were in the bedroom appellant "put his sneaky snake in my coo-cat." She then explained that she used the term "sneaky snake" to refer to a penis and "coo-cat" to refer to a vagina. She also stated that appellant would often order her to go and get lotion for him to use in intercourse. E.R. testified that appellant frequently told her not to tell anyone about this or else he would go to prison.

E.R.'s younger sister, J.R., testified that she remembered being told by appellant to watch out the window for her mother while E.R. and appellant were in the bedroom. J.R. further stated that when appellant and E.R. would go into the bedroom, he would frequently tell J.R. to go and get lotion.

C.M., appellant's daughter, testified that appellant touched her in an inappropriate way when she was about three or four years old. She further stated that when she was three or four years old appellant had sexual intercourse with her on more than one occasion. She was thirteen years old at the time of trial.

On December 21, 1986, E.R., J.R. and their mother were involved in a traffic accident. After the accident, E.R. was examined in the emergency room and a routine urinalysis revealed that she had trichomonas vaginalis, a sexually transmitted disease. It was after this accident that E.R. informed her mother that appellant had molested her on several occasions.

Appellant claims that the trial court committed error when it permitted Dr. Donald Dian, a pediatrician at the Caylor–Nickel Clinic in Bluffton, to testify as to the contents of a telephone conversation he had with Dr. Varju in which Dr. Varju described his treatment of appellant's girlfriend, Martha Garber Zang. Appellant

maintains that this testimony constituted hearsay, and at trial he objected to the admission of Dr. Dian's testimony concerning this phone conversation. Appellant was Garber Zang's live-in boyfriend from August of 1986 through September of the following year. At trial, Dr. Dian testified that on the morning of his testimony he spoke with Dr. Varju over the telephone. In this phone conversation, Dr. Varju informed Dr. Dian that pursuant to a hanging drop slide microscopic examination he had performed that morning, he had determined that Garber Zang had trichomonas vaginalis, the same sexually transmitted disease that afflicted E.R. Dr. Dian proceeded to testify as to the results of this test performed by Dr. Varju. Dr. Varju did not testify at trial.

▮ The portion of Dr. Dian's testimony concerning Dr. Varju's test results and treatment of Garber Zang constituted hearsay and such testimony should not have been admitted into evidence. Hearsay is an out-of-court statement offered to prove the truth of the facts asserted therein and rests on the credibility of a declarant who is not in court and is unavailable for cross-examination. *Bustamante v. State* (1990), Ind., 557 N.E.2d 1313. If challenged evidence is hearsay and does not fall within one of the exceptions to the hearsay rule, then it is inadmissible. *Landers v. State* (1984), Ind., 464 N.E.2d 912; *Indianapolis Newspapers, Inc. v. Fields* (1970), 254 Ind. 219, 259 N.E.2d 651 (2–2 decision; DeBruler, J.). Here, Dr. Dian simply acted as a conduit for the statements of Dr. Varju concerning his diagnosis of Garber Zang. The statements were undisputably offered to prove the truth of that which was asserted. Dr. Dian's testimony suffered from all the defects of hearsay testimony. Varju, the out-of-court declarant, was not under oath and there was no opportunity for appellant, the accused, to confront and cross-examine him as to these statements. Indeed, Dr. Dian was unable to answer even the simplest of questions concerning Dr. Varju's tests. For example, Dr. Dian stated that he did not know when Dr. Varju had performed the test. Dr. Dian's testimony concerning his phone conversation with Dr. Varju was clearly hearsay.

▮ The State asserts that as an expert witness, Dr. Dian was permitted to rely upon hearsay information and to relate it in his testimony. A review of this hearsay exception for expert testimony, however, reveals that Dr. Dian's challenged testimony is not admissible as within the parameters of this exception. This Court has recognized that some experts customarily gather information from a variety of other experts and authoritative sources and rely upon it in reaching their opinions. When an expert witness's own independent opinion is arrived at in this manner and it is introduced into evidence and the expert witness is subject to cross-examination, that part of the substrata of information which aided in the formation of the opinion, though hearsay in nature and though not falling within any hearsay exception, may nevertheless be admissible for use by the trier of fact in judging the weight of the opinion. *Bixler v. State* (1984), Ind., 471 N.E.2d 1093; *Smith v. State* (1972), 259 Ind. 187, 285 N.E.2d 275. Under the Federal Rules of Evidence, an expert witness is likewise permitted to base an opinion on facts or data that are not admissible in evidence if they are of a type reasonably relied upon by experts in the field. McCormick on Evidence, § 324.2 at 909–10 (1984).

In this instance, however, the hearsay statements made by Dr. Dian bore no relation to his rendering of an expert opinion. Here, Dr. Dian was not utilizing medical data or any other type of evidence relied upon by experts in the field in tendering an expert opinion regarding Garber Zang's status. Rather, Dr. Dian was merely restating what Dr. Varju had told him, and offering Varju's statement as a conclusory answer to an ultimate fact in issue. The inference to be drawn from Dr. Dian's testimony was that appellant had, in fact, had sexual relations with the victim based on the fact that E.R. was infected with the same sexually transmitted disease as was a known sexual partner of appellant. However, because of the hearsay nature of Dr. Dian's statements, the veracity of the cru-

cial premise upon which this inference is founded, namely that Garber Zang was infected with trichomonas vaginalis, was not subject to the test of cross-examination. Given these facts, Dr. Dian's testimony does not fall within the parameters of the hearsay exception for expert testimony and thus this hearsay testimony was erroneously admitted at trial.

■ The erroneous admission of hearsay evidence does not automatically constitute reversible error. The State cites to *Altmeyer v. State* (1988), Ind., 519 N.E.2d 138, and argues that the admission of this hearsay testimony constitutes harmless error as there remains overwhelming evidence of guilt sufficient to sustain the conviction. We cannot agree, however, that the improper admission of Dr. Dian's statements constituted harmless error. In defining the non-constitutional, harmless error standard, the United States Supreme Court has stated:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand ... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Kotteakos v. United States*, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557, 1566–67 (1946). Further, this Court has held that the admission of hearsay evidence is not harmless error where its admission prejudices the substantial rights of the defendant. *Harvey v. State* (1971), 256 Ind. 473, 269 N.E.2d 759.

■ In the present case, evidence of the fact that appellant's former girlfriend was infected with the same sexually transmitted disease as the victim was highly relevant to the issue of identity. The only evidence that showed Garber Zang suffered from this sexually transmitted disease was provided by Dr. Dian's hearsay testimony. The direct evidence of appellant's identity was provided by E.R.'s testimony. C.M., appellant's daughter, provided further circumstantial evidence of identity as she testified that appellant had had sexual intercourse with her nine or ten years ago. The credibility of the victim and C.M. was therefore crucial to the State's case. Given these circumstances, the jury would have considered this evidence of infection as proof that appellant was the person who had molested E.R. Further, it follows that the jury would have been swayed by this evidence in arriving at the verdict of guilty. Thus, the improper admission of the hearsay testimony was not harmless error as such testimony infringed upon appellant's substantial rights and had a substantial effect on the verdict. Appellant's conviction for child molesting is therefore reversed and the cause is remanded for a new trial.

Appellant also raises an additional allegation of trial court error that we deem necessary to address as it is likely to arise on remand. On September 23, 1987, appellant filed a motion to suppress asserting that the testimony of C.M. regarded incidents that were too remote in time and would unduly prejudice appellant. On November 30, 1987, the trial court denied this motion to suppress. At trial, C.M., who was thirteen at the time of trial, testified that appellant had sexual intercourse with her on more than one occasion when she was three or four years old. Appellant objected to this trial testimony as he renewed his objection made in his motion to suppress. Appellant maintains that the trial court erred in permitting State's witness C.M. to testify as to these events that occurred nine or ten years prior to her trial testimony.

■ We find no error in the trial court's decision to admit C.M.'s trial testimony. As a general rule, evidence of past misconduct is inadmissible. *Jarrett v. State*

(1984), Ind., 465 N.E.2d 1097. However, evidence of such past criminal activity is admissible where it is used to prove intent, purpose, motive, identity, or common scheme or plan. *Id.* Further, this Court has carved out an exception for those acts involving or showing a depraved sexual instinct. *Caccavallo v. State* (1982), Ind., 436 N.E.2d 775. The rationale for the depraved sexual instinct exception was explained in *Stewart v. State* (1990), Ind., 555 N.E.2d 121, 124, wherein this Court stated that:

> "acts showing a perverted sexual instinct are circumstances which with other circumstances may have a tendency to connect an accused with a crime of that character, and to lend credence to a victim's accusations or testimony which describe acts which would otherwise seem improbable standing alone. *Stwalley v. State* (1989), Ind., 534 N.E.2d 229."

■ The uncharged acts being offered need not be identical to the acts charged; it is sufficient if the same sexual instinct is involved. *Jarrett*, 465 N.E.2d at 1100. In the present case, the charged and uncharged acts were very similar in nature. In both instances, E.R. and C.M. asserted that appellant had intercourse with them at the time he was living in the house with them. Both girls testified that this happened on more than one occasion. Further, they both testified that they were very young when these acts occurred. Thus, given the similarity of the charged and uncharged acts, we do not find error in the trial court's decision to admit C.M.'s testimony pursuant to the depraved sexual instinct exception.

■ Appellant further asserts that C.M.'s testimony should not have been admitted due its remoteness in time as it involved allegations of past misconduct that took place nine years prior to trial. This Court has held, however, that the mere passage of time does not end the relevance of prior sexual crimes. *Lawrence v. State* (1984), Ind., 464 N.E.2d 923. The fact that substantial time had passed goes to the weight of the evidence but does

not render it inadmissible. *Grey v. State* (1980), 273 Ind. 439, 446, 404 N.E.2d 1348, 1353. Thus, the evidence of appellant's past misconduct was not so remote in time as to be rendered inadmissible.

Finally, having determined that Dr. Dian's hearsay testimony was improperly admitted into evidence at trial, thus requiring the grant of a new trial, the Double Jeopardy Clause of the federal Constitution requires that we also address the sufficiency of evidence issue raised by appellant. *Williams v. State* (1989), Ind., 544 N.E.2d 161. In *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988), the United States Supreme Court held that where the

> trial court erred in admitting a particular piece of evidence [without which] there was insufficient evidence to support a judgment of conviction [and where] clearly with that evidence, there was enough to support the sentence[,] ... a reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause....

*Id.* at 40–41, 109 S.Ct. at 290–91, 102 L.Ed.2d at 273–74 (emphasis in original). This Court has likewise held that "where the appellate court reverses the conviction for 'trial error' and the evidence offered by the State and admitted by the trial court— whether erroneously or not—would have been sufficient to sustain a guilty verdict, no double jeopardy question is presented on retrial." *Perkins v. State* (1989), Ind., 542 N.E.2d 549, 551. *See also Phillips v. State* (1989), Ind., 541 N.E.2d 925; *Henson v. State* (1989), Ind., 535 N.E.2d 1189.

■ Here, the evidence presented at appellant's trial was sufficient to support appellant's conviction. At trial, E.R. testified that appellant had sexual intercourse with her on more than one occasion. Further, E.R.'s younger sister J.R. corroborated much of E.R.'s testimony. This evidence, coupled with the erroneously admitted hearsay testimony of Dr. Dian, constitutes sufficient evidence to support appellant's conviction. Thus, this cause can be remanded for retrial without offending the

protections afforded by the Double Jeopardy Clause.

The judgment of the trial court is reversed and this cause is remanded for retrial.

SHEPARD, C.J., and DICKSON and KRAHULIK, JJ., concur.

GIVAN, J., dissents and concurs with separate opinion.

GIVAN, Justice, dissenting and concurring.

I respectfully dissent from that portion of the majority opinion which holds that it was reversible error to permit Dr. Dian to testify concerning his conversation with Dr. Varju concerning the infection of appellant's girlfriend with trichomonas vaginalis. I agree with the majority that the testimony of Dr. Dian was hearsay and as such was inadmissible. However, I disagree that it should result in the reversal of this case.

The majority opinion cites *Altmeyer v. State* (1988), Ind., 519 N.E.2d 138 for the proposition that the erroneous introduction of hearsay material does not automatically constitute a reversible error. However, the majority goes on to distinguish *Altmeyer* from the case at bar and arrive at an opposite conclusion. In examining the entire record in this case, I think it is highly unlikely that Dr. Dian's testimony concerning his conversation with Dr. Varju played a major role in appellant's conviction.

In the case at bar, the jury was not required to rely upon the unsupported testimony of a young victim. The victim's testimony was bolstered by her sister and by appellant's daughter. Absent the testimony of Dr. Dian, the evidence in this case is overwhelming as to appellant's guilt. Under these circumstances, I do not think we can justify the expenditure of judicial time and the inconvenience to the prosecuting witnesses to order a new trial.

I concur with the majority that the testimony of appellant's daughter, although concerning incidences that occurred some nine to ten years previously, in fact was admissible.

I also have examined other alleged errors in appellant's brief and find none of them rising to the stature of reversible error. I therefore would affirm the trial court.